IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Trovon Aquarius Keith, #272473, ) | C/A No. 1:09-2264-RMG-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Officer Straker and Lieutenant ) | |
| Thompson, ) | |
| ) | |
| Defendants.[1] ) | |
| ) | |

Plaintiff Trovon Keith filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was sentenced on August 8, 2002 to incarceration with the South Carolina Department of Corrections ("SCDC") for 90 years for first degree criminal sexual conduct. Currently before the court is Defendants' Motion for Summary Judgment [Entry #27]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff filed his complaint in this action on August 27, 2009. On November 10, 2009, the district judge dismissed Plaintiff's claims against defendants Shirley, James, Smalley, Hampton, and Catoe, leaving only claims against defendants Straker and

---

[1] As all other defendants have been dismissed from this action, the caption reflects only the remaining defendants.

Thompkins (incorrectly named as defendant Thompson). Defendants Straker and Thompkins ("Defendants") filed a motion for summary judgment on March 11, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #28]. Plaintiff filed a response in opposition to Defendants' motion on April 7, 2010 [Entry #34]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted.

In his complaint, Plaintiff alleges that Straker violated the Eighth Amendment by using excessive force and by acting with deliberate indifference to his medical needs. Plaintiff claims the following in his Complaint:

> On August 21, 2009, Cpl. [O]fficer Straker sprayed me with chemical/ma[c]e for no reason. I have filed previous lawsuit[s] on her co-workers so she is retaliating against me. She sprayed ma[c]e in my eyes as well. She also told Major that I flashed her. She also told officers to make sure I do not receive any medical attention. She has caused me mental distress.

Compl. at 5. Straker contends that she observed Plaintiff standing at the cell flap door with his erect penis through the flap while he stroked it in a back and forth motion. Straker alleges Plaintiff was standing on his legal materials so that his waist would be in a position where she could not avoid seeing his actions. Straker asserts she gave Plaintiff a direct order to stop this behavior. According to Straker, she administered pepper spray into the flap only when Plaintiff refused her order. Straker Aff. ¶ 2 [Entry #27-2].

Plaintiff also alleges Thompkins improperly confiscated his legal documents in retaliation for having filed a previous lawsuit. Thompkins asserts Plaintiff's legal documents were removed and placed in his individual property bin because they exceeded the amount an inmate is permitted to store in his cell.

II.  Discussion

   A.  Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id.* The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."

B.  Excessive Force

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency are always violated . . . whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 130 S.Ct. at 1179 (internal citations and quotations omitted).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."

B.  Excessive Force

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency are always violated . . . whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 130 S.Ct. at 1179 (internal citations and quotations omitted).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors

include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the record is insufficient to establish a claim for excessive force. Here, Straker's use of force was necessary, as the record demonstrates Plaintiff failed to follow direct orders. The Report on Use of Force states Plaintiff was standing naked at his cell flap door "with his erect penis through the flap stroking it in a back and forth motion." [Entry #27-2]. The Report also states that Straker administered pepper spray after she gave Plaintiff a direct order to stop and he refused. *Id.* Plaintiff's affidavit submitted in opposition to summary judgment does not deny that he was masturbating, that Straker gave him a direct order to stop, or that he refused to stop. *See* [Entry #34-1].

In addition, it appears the amount of force was not excessive, as the report indicates that Plaintiff was offered, but refused, medical attention after Straker sprayed him. Although Plaintiff claims he suffered burns, scars, and vision problems as a result of the pepper spray, he provides no evidence, such as medical records, to support this claim. In fact, the medical records submitted by Defendants indicate Plaintiff had previously suffered from scars and vision problems, and do not support Plaintiff's claim of burns.

With regard to the threat reasonably perceived, Plaintiff's failure to respond to Straker's direct order to cease masturbating, particularly when combined with Plaintiff's history of criminal sexual misconduct, created a reasonable perception by Straker that Plaintiff posed a threat to the safety of the staff and institution. Therefore, after balancing the *Whitley* factors, and based on the record presented, Plaintiff has failed to establish a claim for excessive force and Defendants are entitled to summary judgment on this claim.

C. Deliberate Indifference to Plaintiff's Serious Medical Needs

In his complaint, Plaintiff alleges Straker told other officers to make sure he did not received any medical attention. Compl. at 4. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was

careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Most pertinent to the case at hand, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized

or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Although Plaintiff alleges that Straker told other officers to deny him medical attention, he has presented no evidence to support this allegation. In fact, the Report on Use of Force, which is signed by institutional medical personnel, indicates that Plaintiff was offered medical treatment following the use of force and he refused the same. Plaintiff has not contested the validity of this Report. In addition, Plaintiff's medical records indicate he continued to be treated for his existing skin and eye problems. Plaintiff has failed to set forth any facts through affidavit, medical records, or other evidence to support his allegation that Straker acted with deliberate indifference to Plaintiff's serious medical need. Therefore, Plaintiff has not demonstrated an actionable claim under § 1983 regarding his medical treatment and Defendants are entitled to summary judgment on Plaintiff's claim for medical indifference.

   D.  Denial of Access to the Courts

  Plaintiff also brings a claim for denial of access to the courts against Thompkins. Although Plaintiff alleges Thompkins removed Plaintiff's papers in retaliation for previous lawsuits he filed, Thompkins contends the papers were removed because they exceeded the amount of papers inmates are allowed in their cell. According to Thompkins, and undisputed by Plaintiff, an inmate is provided with one box to store legal papers within his cell. Thompkins Aff., ¶ 3 [Entry #27-3]. If the amount of paper exceeds the size of the box, the excess is removed and placed in property control at the

institution. *Id.* An inmate may retrieve the stored documents upon request and exchange other papers not in use so that he does not exceed the amount allowed. *Id.*

At the time of this incident, it was discovered that Plaintiff possessed documents in excess of the amount allowed. Defendant asserts that Plaintiff was given the opportunity to choose the documents he wanted to keep before the excess papers were removed and submitted for storage. *Id.* At any rate, Defendants argue Plaintiff has not demonstrated he suffered any "actual injury" as a result of the alleged denial of access to the courts. The undersigned agrees.

In order to state a claim of denial of access to the courts, a plaintiff must allege that he had been prejudiced in pursuing non-frivolous litigation. *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Id.* at 343. In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989).

A plaintiff must demonstrate that the defendants caused actual injury, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis*, 518 U.S. at 353–54. The actual injury requirement is not satisfied by just any type of frustrated legal claim. Actual injury requires that the inmate demonstrate that his

"nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55. Here, Plaintiff has neither alleged nor submitted proof of any actual injury from his alleged denial of access to the courts. Because Plaintiff has not demonstrated any actual injury, Plaintiff's claims against Thompkins cannot survive summary judgment and must be denied.

E. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526

U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, it is respectfully submitted that Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these

Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

F. State Law Claims

Having found that Defendants are entitled to summary judgment regarding Plaintiff's remaining constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c).

III. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #27] be granted.

IT IS SO RECOMMENDED.

November 10, 2010                          Shiva V. Hodges
Florence, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**