IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Trovon Aquarius Keith, ) | Civil Action No. 1:09-cv-2264-RMG-SVH |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **ORDER** |
| Officer Straker and Lieutenant Thompson, ) | |
| ) | |
| Defendants. ) | |

Plaintiff brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff complains that his constitutional rights were violated in various respects. This case was automatically referred to the United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) D.S.C. The Magistrate Judge recommended granting Defendants' summary judgment motion. (Dkt. No. 40). Plaintiff has not objected to the R&R. As shown herein, this Court has reviewed the Record for any errors of law and agrees with the Magistrate Judge's report.

## Background

Plaintiff contends that Defendants used excessive force, were deliberately indifferent to his medical needs, and denied him access to the Courts. Plaintiff's other claims against other defendants have previously been dismissed by this Court. (Dkt. No. 14).

## Discussion

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final

1

determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

A. Excessive Force

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim. A claimant must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency are always violated . . . whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 130 S.Ct. at 1179 (internal citations and quotations omitted). The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of

the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321. After applying the above factors to the facts at hand, the record is insufficient to establish a claim for excessive force. Here, Straker's use of force was necessary, as the record demonstrates Plaintiff failed to follow direct orders. The Record contains the "Report on Use of Force" which states Plaintiff was standing naked at his cell flap door "with his erect penis through the flap stroking it in a back and forth motion." (Dkt. No. 27-2). The Report also states that Straker administered pepper spray after she gave Plaintiff a direct order to stop and he refused. *Id.* Plaintiff's affidavit submitted in opposition to summary judgment does not deny that he was masturbating, that Straker gave him a direct order to stop, or that he refused to stop. (*See* Dkt. No. 34-1).

Further, the amount of force was not excessive. The Report indicates that Plaintiff was offered, but refused, medical attention after Straker sprayed him. While, Plaintiff claims he suffered burns, scars, and vision problems as a result of the pepper spray, he provides no evidence, such as medical records, to support this claim. Moreover, the medical records submitted by Defendants indicate Plaintiff had previously suffered from scars and vision problems, and do not support Plaintiff's claim of burns.

With regard to the threat reasonably perceived, Plaintiff's failure to respond to Straker's direct order to cease masturbating, particularly when combined with Plaintiff's history of criminal sexual misconduct, created a reasonable perception by Straker that Plaintiff posed a threat to the safety of the staff and institution. Therefore, after balancing

3

the *Whitley* factors, and based on the record presented, Plaintiff has failed to establish a claim for excessive force and Defendants are entitled to summary judgment on this claim.

B. Deliberate Indifference to Medical Needs

Plaintiff alleges Straker told other officers to make sure he did not received any medical attention. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In other words, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990) (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff

4

may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Although Plaintiff alleges that Straker told other officers to deny him medical attention, he has presented no evidence to support this allegation. In fact, the Report on Use of Force, which is signed by institutional medical personnel, indicates that Plaintiff was offered medical treatment following the use of force and he refused the same. Plaintiff has not contested the validity of this Report. In addition, Plaintiff's medical records indicate he continued to be treated for his existing skin and eye problems. Plaintiff has failed to set forth any facts through affidavit, medical records, or other evidence to support his allegation that Straker acted with deliberate indifference to Plaintiff's serious medical need. Therefore, Plaintiff has not demonstrated an actionable claim under § 1983 regarding his medical treatment and Defendants are entitled to summary judgment on Plaintiff's claim for medical indifference.

C. Denial of Access to the Courts

Plaintiff also brings a claim for denial of access to the courts against Thompkins. Although Plaintiff alleges Thompkins removed Plaintiff's papers in retaliation for previous lawsuits he filed, Thompkins contends the papers were removed because they exceeded the amount of papers inmates are allowed in their cell. According to Thompkins, and undisputed by Plaintiff, an inmate is provided with one box to store legal papers within his cell. *See* Thompkins Aff., ¶ 3, Dkt. No. 27-3. If the amount of paper exceeds the size of the box, the excess is removed and placed in property control at the institution. *Id.* While it may be removed from the cell, the inmate is not deprived access

to the excess materials, in fact an inmate may retrieve the stored documents upon request and exchange other papers not in use so that he does not exceed the amount allowed. *Id.*

At the time of this incident, it was discovered that Plaintiff possessed documents in excess of the amount allowed. Defendant asserts that Plaintiff was given the opportunity to choose the documents he wanted to keep before the excess papers were removed and submitted for storage. *Id.* At any rate, Defendants argue Plaintiff has not demonstrated he suffered any "actual injury" as a result of the alleged denial of access to the courts. Given the length of the legal briefing and the other suits filed by Plaintiff in this District, this Court cannot find that Plaintiff has been denied access.

In order to state a claim of denial of access to the courts, a plaintiff must allege that he had been prejudiced in pursuing non-frivolous litigation. *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Id.* at 343. In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989).

A plaintiff must demonstrate that the defendants caused actual injury, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis*, 518 U.S. at 353–54. The actual injury requirement is not satisfied by just any type of frustrated legal claim. Here, Plaintiff has neither alleged nor submitted proof of any actual injury from his alleged denial of access to the courts. Because Plaintiff has not

demonstrated any actual injury, Plaintiff's claims against Thompkins cannot survive summary judgment and must be denied.

D. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Even if Plaintiff had presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

7

## Conclusion

Based on the above, Defendants' Motion for Summary Judgment is **granted**. (Dkt. No. 27) and the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

December 8, 2010
Charleston, South Carolina